IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

vs.  Case Nos.:  4:09cr30/RH/GRJ
                4:12cv438/RH/GRJ

ZEBEDIAH KYLER

## ORDER AND REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and supporting memorandum of law (doc. 91), and the Government's response. (Doc. 94.) Defendant did not file a reply, despite having been afforded the opportunity to do so (*see* doc. 92), but later filed a motion to amend his § 2255 motion (Doc. 95) to which the Government responded. (Doc. 96.)  After a careful review of the record and the arguments presented, the Court concludes that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion and the motion to amend same should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND[1]

Defendant was charged in a six count superseding indictment with three counts of bank robbery by force, violence and intimidation (Counts One, Two, and Four), two counts of possession and brandishing a firearm in furtherance of a crime of violence (Counts Three and Five) and one count of money laundering (Count Six). After a three

---

[1] Detailed statements of facts describing the offense conduct are set forth in the Presentence Investigation Report (doc. 68), which the court adopted without change. (*See* doc. 64). The facts have also been summarized in the Government's response to Defendant's § 2255 motion and will not be repeated herein.

day jury trial, Defendant was acquitted of Count One of the Indictment and convicted on the remaining counts. (Doc. 47).

The Presentence Investigation Report ("PSR") was disclosed to the defense on January 21, 2010. (Doc 50.) The applicable advisory guidelines imprisonment range on Counts 2, 4, and 6 was 63 to 78 months; the guidelines range for Count Three was a consecutive term of 84 months due to the application of the statutory mandatory minimum. The guidelines range for Count Five was 300 months, consecutive to all other counts. (Doc. 86, PSR, ¶¶ 80, 81.)

At sentencing, Defendant complained that his court appointed counsel, Armando Garcia, had provided ineffective assistance in that counsel had failed to investigate alleged evidence of Defendant's innocence and had "worn a wire" when he went to see Defendant at the jail. (Doc. 82 at 2–8.) The court declined to remove Mr. Garcia, noting that counsel had acted as a vigorous and effective advocate for his client, but also advised Defendant that he would have the opportunity to present his allegations in a motion pursuant to 28 U.S.C. § 2255 if he chose to do so. (*Id*. at 8–11.) The court sentenced Defendant to a term of twelve months on the bank robberies, followed by the mandatory 32 years on the firearms charges, making clear that the 33 year sentence was not separable, but was the sentence for the "entire case." (*Id*. at 17–20.)

Defendant appealed, raising a single issue. He asserted that the district court committed plain error when it permitted Government expert Richard Vorder Bruegge to testify, without objection, based on a technique called "reverse projection

photogrammetry" regarding the bank robber's approximate height. (Doc. 89). The Eleventgh Circuit found no error and affirmed.

In the present motion, Defendant raises a single ground for relief. He asserts that trial counsel was constitutionally ineffective for failing to request a *Daubert* hearing with respect to the testimony challenged on appeal.

## LEGAL ANALYSIS

### *General Standard of Review*

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998)*; McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n. 14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523

U.S. at 622 (citations omitted).  To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."  *Lynn*, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d, 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).  In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir.2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."  *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of*

*Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to review counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland,* 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. Strickland, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the

outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (citing *Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to

have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough, 471* F.3d 1360, 1363 (11th Cir. 2006) (citing *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore*, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada*, 941 F.2d at 1559; *Holmes v. United States*, 876 F.2d 1545, 1553 (11th

Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

### *Ground One*

Defendant contends that his trial attorney was constitutionally ineffective because he failed to request a *Daubert*[2] hearing regarding whether Government witness Richard Vorder Bruegge was qualified to testify as an expert on reverse projection photogrammetry. Defendant asserts that the Government "provided no physical evidence that tended to prove" that Defendant was guilty of the bank robberies, and no witnesses positively identified Defendant as the bank robber. Rather, he maintains, the Government's case "depended almost exclusively on the testimony of Investigator Vorder Bruegge." Defendant claims that Vorder Bruegge's testimony was insufficiently specific to meet the standards of Fed.R.Evid. 702 and *Daubert*. He says that due to counsel's failure to object to Vorder Bruegge's testimony, the district court did not make any of the three determinations required by *Daubert*: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See Hendrix ex rel. G.P. v. Evenflo Co.,Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (citing *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)).

---

[2]*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592–593 (1993).

Defendant not only understates the strength of the Government's case against him, but also overstates the significance of Dr. Vorder Bruegge's testimony in the context of the case as a whole.  Dr. Vorder Bruegge's testimony comprised approximately ten pages of the 750 plus page transcript from Defendant's three day trial.  (Doc. 81 at 36–48; Tr. p. 590–601.)   Dr. Vorder Bruegge testified that he worked for the FBI in the digital evidence laboratory in Quantico, Virginia, as a senior photographic technologist.  His responsibilities included investigating imaging technologies, how to analyze and acquire images, conducting forensic examinations of images and video evidence, supervision of others and overseeing research in imaging technologies, providing training and assisting other laboratories as needed.  Vorder Bruegge testified that he had worked in this capacity for almost fifteen years, during which time he had performed video image analysis in hundreds of cases and testified as an expert in about 60 cases.  He had a Ph.D. in geological sciences and was a member of several professional societies including the American Academy of Forensic Sciences, the International Association for Identification and the Facial Identification Scientific Working Group.

With respect to the analysis conducted in this case, Dr. Vorder Bruegge testified that he used reverse projection photogrammetry to analyze video images from each of the three robberies charged in this case.  He explained that the technique involves reconstructing the scene that is recorded in the photographic or video image and then taking physical measurements within the scene from which to assess the height of a person in the scene.  He explained that the original video recordings are sent to a lab,

put into a computer and fed into what is called a "mixing board" which allows investigators to take a recorded scene and compare it in realtime to a realtime video. Investigators return to each scene to take a realtime video to ensure that exactly the same scene is recorded, and after confirming that the camera is in the same place, the height chart is inserted into the video where the person was standing. In this case, Dr. Vorder Bruegge determined that the approximate location of the head of the subject was between five feet ten and a half inches and five feet eleven inches in the three videos. Dr. Vorder Bruegge explained that this was not the true height or the "erect stature" of the individual, which would be an individual's height when standing as if a soldier standing at attention. He opined that, as a result of a number of factors, the true height of the individual in the three videos was slightly above that range. Dr. Vorder Bruegge testified that he did not learn of Defendant's height, six feet, until the morning of the trial.

Defendant's assertion that he was prejudiced by counsel's failure to request a *Daubert* hearing is speculative and unsupported. To show that he was prejudiced by counsel's alleged failing, Defendant first must show that had there been such a hearing, Dr. Vorder Bruegge's testimony would have been excluded. He has not offered anything concrete in support of this position. For instance, he has not suggested any way in which Dr. Vorder Bruegge's credentials were lacking, such that he was unqualified to offer the testimony in question. And, as noted by the Eleventh Circuit, no case of the Eleventh Circuit or the Supreme Court had rejected reverse projection photogrammetry as not sufficiently reliable under *Daubert*, and at least one court had

upheld the admission of expert testimony based on photogrammetry.  (Doc. 89 at 8; *United States v. Kyler*, 429 F. App'x 828, 830 (11th Cir. 2011) (citing *United States v. Quinn*, 18 F.3d 1461, 1464–65 (9th Cir. 1994)). To the extent Defendant claims, as the basis for his ineffective assistance of counsel claim, that the district court erred in not conducting a *Daubert* hearing, his argument was rejected on appeal.  The Eleventh Circuit said that a formal *Daubert* hearing is not required in every case.  *Kyler*, 429 F. App'x at 830 (citing *United States v. Hansen*, 262 F.3d 1217, 1234 (11th Cir. 2001)); *see also United States v. Majors*, 196 F.3d 1206, 1215–1216 (11th Cir. 1999).

   Counsel's strategy seems to have been not to draw attention to, or place any importance on, the testimony regarding the reverse projection photogrammety.  In his closing argument, counsel referred to Dr. Vorder Bruegge's testimony as "reverse photography blah-blah stuff, where we can get height determinations through the magic of technology even they can't give you an exact [height]" and noted that Vorder Bruegge admitted that "[the] determinations are not precise."  (Doc. 81 at 80–81; Tr. 731–732).  A decision not to request a *Daubert* hearing under such circumstances was not unreasonable, particularly in light of the testimony already in the record regarding Dr. Vorder Bruegge's credentials.

   Furthermore, even if Defendant were successful in his endeavor to show that Vorder Bruegge's testimony would have been excluded given a proper request for a *Daubert* hearing, to establish prejudice he must further show that had the testimony been excluded, the outcome of the proceedings would have been different. As noted above, this brief testimony played a very small part in the proceedings, and it was

discredited during counsel's closing argument. Contrary to Defendant's suggestion, there was abundant other evidence linking him to the crimes, including his possession of dye-stained money, his access to the stolen vehicle used in the bank robbery and matching fibers discovered on Defendant's person and in the vehicle, a "home video" showing his children playing in piles of money and law enforcement's discovery of the unique rounded barrel handgun near the stolen vehicle. Notably, the Court commented at sentencing that the evidence was "overwhelming." (Doc. 82 at 18.)

Accordingly, based upon the foregoing, Defendant cannot show that counsel's failure to request a *Daubert* hearing deprived him of a fair trial or that there is a reasonable probability that the outcome of the proceeding would have been different had counsel done so. Petitioner is not entitled to relief.

### *Defendant's Motion to Amend*

Defendant also has filed a motion for leave to amend his pending § 2255 motion to add a claim based on the Supreme Court's ruling in *Alleyne v. United States*, 133 S.Ct. 2151 (2013). (Doc. 95). Defendant's proposed amendment was filed on December 20, 2013, well over a year after his judgment of conviction became final on September 1, 2011. The timing of the Supreme Court's decision in *Alleyne* does not excuse his untimely filing, as *Alleyne* is not retroactively applicable on collateral review. *See Jeanty v. Warden, FCI Miami*, 757 F.3d 1283, 1285 (11th Cir. 2014); *United States v. Harris*, 741 F.3d 1245, 1250 n.3 (11th Cir. 2014); *see also United States v. Redd*, 735 F.3d 88, 91 (2d Cir. 2013); United States v. Winkelman, 746 F.3d 134, 136 (3d Cir. 2014); *In re Kemper*, 735 F.3d 211, 212 (5th Cir. 2013); *In re Mazzio*, 756 F.3d 487 (6th

Cir. 2014); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013); *In re Payne*, 733 F.3d 1027, 1029–1030 (10th Cir. 2013). Therefore, his motion to amend must be denied as untimely.

## CONCLUSION

For all of the foregoing reasons, the court concludes that Defendant has failed to show that he is entitled to § 2255 relief or that an evidentiary hearing is warranted. Defendant's § 2255 motion should be denied.

### Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may

bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly it is **ORDERED:**

Defendant's Motion for Leave to Amend Motion to Vacate, Set Aside, or Correct Sentence (Doc. 95) is **DENIED**.

And it is respectfully **RECOMMENDED**:

1. The motion to vacate, set aside, or correct sentence (Doc. 91) should be **DENIED**.

2. A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 26th day of February, 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).